May it please the Court, Fred Rowley, Jr. for the Government. How are you? Fine, Your Honor. Thank you. The Government respectfully submits that the District Court's suppression ruling was wrong in two respects. First, the District Court erred in failing to find that the officers had probable cause to search the jacket that the defendant removed. And second, that the District Court clearly erred in failing to find abandonment in this case. As to probable cause, the Government believes that the strongest factor is the defendant's own actions. When the officers approached the car in which the defendant was sitting, the defendant reached behind his back and extended his right arm as far as it would go. That was what the officer observed. The Government believes that that action is intrinsically How do you reach behind your back and extend your arm as far as it will go? I thought you had to bend your arm in order to reach behind your back? I think, Your Honor, what the officer was probably getting at is it looked like he was straining to extend his arm. I think that's what the officer meant by saying that he appeared to be extending his arm as far as it would go. I don't know if it's appropriate to demonstrate, but anyway, it appears that He could have been just scratching or getting into an odd yoga position, too. It's certainly possible that the defendant was scratching his back. That's possible. But in the circumstances, the most reasonable inference, given what the officers had just seen with the driver of the car, that the officers had seen her make a furtive gesture and then had discovered marijuana in her possession, given that and given the defendant's statements after he removed his jacket, the most reasonable inference is that he was attempting to hide contraband, that the reach was an attempt to do that in light of all the circumstances together. And the district court erred in failing to consider the defendant's action in light of what had gone on before. That is to say, the driver's possession of marijuana, the driver's furtive gesture, which would be a Let's take that fact. I mean, let's say there's some reaching behind his back. He had reached into the jacket pocket and pulled out a paper bag and said, Excuse me, officer, while I conceal this in the glove compartment. Or just said nothing, just opened the glove compartment, reached over the front seat, put the bag in the glove compartment and then got out and said, OK, now I'm out of the car. Let's say that was it. We don't have any doubt that he in fact had something on him and that he We don't know what it is. It's a paper bag. Could be his lunch. In a way, Your Honor, that might be less suspicious because the defendant is being up front about it and saying, Please, officer, I need to stow something away and putting it in the glove compartment. So in a way, it would be less furtive. But if it was married with, for example, a false denial of having ever possessed the bag in the first instance, that might also be suspicious. So it would depend upon the facts. But the furtive gesture coupled with the false denial of ever having even worn the jacket, that's certainly suspicious. And given the other factors that the officers knew, critically, the driver's actions, but also, and these are certainly less significant, but the character of the neighborhood. I can sort of buy into suspicion, but power calls, don't you have to have, for power calls, don't you have to have an offense in mind? I mean, it could be, I mean, assuming they say, oh, yeah, we're really suspicious that he was hiding something. It could have been a gun. It could have been an explosive device. It could have been some one of a variety of drugs. It could have been stolen property. It could have been, you know, the results of his prostate exam, for all we know. And he's sort of embarrassed about that. I mean, I, how can you have probable cause when you don't know what the crime is? Your Honor, all the officers have to have is they have to have a reasonable probability that the defendant has just stowed contraband in the jacket. And given what had gone on before, given that the driver had been caught with marijuana. Your Honor, why are they calling it a reasonable probability? It changes anything. It's still the same standard. It has to be probable cause. Yes, Your Honor. Probable cause of a crime. Absolutely. The question I'm asking you, can you have probable cause and go, you know, sort of in the indefinite I suspect this person of committing a crime. I don't know what crime it is. You know, it could be carrying a concealed weapon. It could be being a felon in possession of a gun. It could be possession of contraband. It could be possession of drugs. It could be possession of stolen property. Or it could be something wholly innocuous but private. Can one have probable cause of crime without knowing what the crime is, even what the category of crime is? Your Honor, I don't think it could be so general as I think that there's some crime that's happening. But in this case, the officers had objective facts that could reasonably support the conclusion that the defendant had stowed drugs or perhaps a weapon. And given the close nexus between drugs and firearms, for example, but given what the driver had done, given the character of the neighborhood, and it's important to stress that that fact, of course, would not be enough, and that fact is in itself not entitled to a great deal of weight. Well, let's take another example. Let's take the woman on the street that they stopped. If she had reached in her handbag, would that give them the right to search the handbag? I'm sorry, Your Honor. Yeah. I mean, it seems to me you're advocating sort of a broad-based rule that if someone makes a gesture, reaches into their pockets, reaches into a bag, scratches their back, that they're entitled to search. That's probable cause. And then that seems to be a bit untenable to me. No, Your Honor. That's not the standard that the government is advocating at all. In these circumstances, there was a specific reason for the officers to believe that when the defendant reached, what he was doing was hiding drugs or perhaps a firearm, not just anything. And there would certainly need to be some concrete facts for the officers to draw an inference about what the person might be doing. Probable causes, of course, deals with probabilities and not certainties, but it can't just be, I think, that there's some kind of a crime being committed. And in this case, the officers ---- But, you know, if you read the testimony, it seems to me that they weren't thinking about drugs. They were thinking about a gun. I think that they were worried ---- So he unholsters, he snaps up his gun. When he sees a gesture, he unfastens the holster and he puts his hand on the gun. And then when they put the jacket away, then he relaxes. He's not thinking drugs. Well, Your Honor, the situation is in flux. And at that point, what they've seen the defendant do is make an awkward reach, remove his jacket, and in response to an officer's question, say, huh, which the officer took to be evasive. And so in those circumstances, the officer may be concerned that the defendant has stowed a weapon, but it would also be reasonable, and it is an objective standard, for the officer to conclude that what he might have done is hidden contraband as well. I think that both of those are reasonably probable. But it would certainly not do, just to get back to Your Honor's question, it would not do, I think, to have a generalized sense that some crime was getting or was being committed. I believe that the facts here, though, support something a bit more concrete. And that's why the government submits that there was probable cause to believe it was contraband in the jacket. The government's alternative theory is that the district court clearly erred in failing to find abandonment. And the strongest facts on that theory are the defendant's own statements. The defendant stated that he did not own the jacket and denied ever even having worn the jacket. And under the Court's cases, those kind of – that kind of disclaimer of any interest in property can relinquish, objectively speaking, a defendant's interest in his property. And that's what the government believes alternatively happened in this case. Now, the district court suggested in its ruling that the defendant, by stating that the jacket was not his and that he had never worn the jacket, might have intended to signal that he didn't want the officers to search it. And that might well be his subjective intent, but the question is what those words objectively and reasonably suggested. And the government submits that a reasonable person, upon hearing those words, would think that the defendant wanted to disassociate himself as much as possible from the jacket. I thought the testimony was that the defendant didn't say he wasn't wearing it, but that was the conclusion that the officer reached. The officers – the officer did not have quotes for that statement. That's absolutely right. Right. I mean, the Court says on page 3, he said, that's not my jacket. He said, that's not my jacket. He said, you were wearing it. I want you to take it off. All this is in quotes. Witness, that's correct, sir. The Court says, then the defendant denied ever wearing the jacket. That's not in quotes. That's correct. Do you know what he said? No, sir, I don't. I don't have his exact words. Your Honor. It was a conclusion you came to, that he was in denial about wearing the jacket. Yes, sir. I believe that the officer did clarify that if you look at the officer's declaration the officer said that the defendant said he wasn't wearing it. But you're absolutely right. The officer did not have a direct quotation for what the defendant said, as opposed to what the officer said or the defendant's initial denial of ownership of the jacket. I see that my time is running out. If I may, I'd like to reserve whatever time I have left for rebuttal.  Your Honor. Good morning, Your Honor. I'm Terry Simon from the Federal Public Defender's Office for Mr. Jones. With regard to the issue of probable cause. Why don't you start with abandonment? It seems to me that's your toughest issue. All right. He says that's not my jacket. It's hard to argue that that's not abandonment, isn't it? He did. But, of course, the standard this Court is going to be using is one of clear error. And the question really is whether Judge Vernon's decision is one that is plausible, given the facts that he was facing. Mr. Jones took the jacket off. He placed it in the back seat of his sister's car. He certainly placed it there. He certainly didn't place it in an area that was accessible to the general public. And he did deny ownership of the jacket. A sort of clumsy denial, which the officers certainly didn't take as true. They took it as an opportunity to try to search through the jacket. It seems to me that Judge Vern picked a plausible outcome here. And the cases that are cited by the government, each one of these cases, is cases in which the district court actually found abandonment and in which the court of appeals said, yes, that's right, that certainly is a plausible outcome here. Judge Vern obviously has a lot of experience in these kind of cases, said, you know, a reasonable person wouldn't have taken this. Denial of ownership as a go-ahead, you can look at the jacket. It was a pretty clumsy denial designed to cause the officers to not have to give consent. But it seems to me that... But I don't know how... You know, we've got cases that say, look, if you say it's not my jacket, it doesn't matter that officers have seen you carrying it. There's Hines and there's Sella and Jackson, you know, all sorts of cases. This Jackson guy has got the suitcase, has seen him carrying the suitcase. And then they approach him and say, oh, no, it wasn't my suitcase. This isn't my suitcase. Why can't somebody say it's not my jacket? It's sort of like, you know, let's say it really is his jacket. And at some point he just says it's not mine. He disassociates himself from it. He gives up his rights in it. And this is not something about which we sort of... It goes from district judge to district judge. And people have to guess as to what is the gut feeling going to be of a particular district judge. They say, look, if you say it's not yours, damn, you've severed those ties. As a matter of law, you've severed your connection to the thing. And the police can pick it up and look at it. If this had been in the middle of the street, if he had said, nope, this is not my jacket, and dropped it in the middle of the street, they are required to leave it there? In the middle of the street would have been, I think, a very different set of circumstances. Of course it's a different case. That's why it's a hypothetical. But you agree, if he sort of said, nope, this is not my jacket. I've abandoned it. It's not my jacket. He drops it in the middle of the sidewalk there. They can pick it up and look at it, right? If he left it in a place accessible to the general public, I would say yes. Well, but they have permission to search the car. And any violation of the space within the car, he doesn't have any standing to object to. As far as he's concerned, it's as if he dropped it in the middle of the street. If they go into the car and mess with the jacket, that might be a violation of the sister's rights. But he doesn't have any standing to raise those. Well, he didn't necessarily. He wasn't necessarily in a position to know that his sister had consented to the search of the car. So from his point of view, a reasonable person in his point of view, placing it. Let's say she had not abandoned it at all. Let's say it was direct violation. She said, whatever you guys do, don't you go into that car. And I specifically don't want you to pick up the jacket that you find in the car. Let's say she said that very specifically. And they did exactly the opposite. What's it to him? It's not his car. He doesn't have any rights in the car. And let's say the, you know, the sister might then have some sort of claim for invasion of her rights in her car. But he doesn't have any claim. What he has done is he has said, this is not my jacket. In the Rios case, the defendant dropped an item in a car. And, in fact, the court found that the person did not abandon it. A passenger lifts a package dropped to the floor of a taxi cab while riding in it can hardly be said to have abandoned it. That's a U.S. Supreme Court case. And it seems to me that it does matter where he places it and what he does to attempt to safeguard it. And I think not dropping it in the middle of the street. I'm sorry. Did he say this is not my jacket in the Rios? He did. No, he did not. He did not. And doesn't that make all the difference? I mean, he's affirmatively disclaiming. I mean, clumsily, as you said, he probably assumed that she hadn't given consent, that they couldn't get in the car, and that the only way he could get in the car is if it's his jacket. And so he says, no, it's not my jacket, or whatever he was thinking. But, you know, once he says it's not my jacket, does it really matter if they don't believe him? They clearly didn't believe him, of course. I do think it made some difference that they didn't believe him. It was pretty clearly an effort simply to convince them not to search. And I think that it can't be reasonably viewed as relinquishing all interest in the jacket. Well, I think it could be viewed that way, certainly. And this Court, if it were reviewing it, no one might look at it that way. But I think that Judge Byrne's conclusion here is one of two plausible outcomes. And I think the Court should defer to it under the clear error standard. In addition, with regard to the issue of probable cause, if you look at all of the factors together, I don't think they really amount to probable cause. Here you have the factors being the sister was arrested for possession of marijuana. Not for sale, but a small enough amount that she was let go. He was in a car late at night in a high-crime area. He made some sort of movement. He took off his jacket. He was nervous. He was on probation. He denied ownership of the jacket. This looks suspicious. And, in fact, Judge Byrne found that it might be sufficient to constitute reasonable suspicion. But I think it falls far short of the probable cause standard. And it falls short of that standard as cited in some of the other cases that they've mentioned. In Spencer, where someone has an empty holster. In Humphreys, where there was the smell of marijuana smoke. In Kishnevis, where they found a loaded weapon. In Fuentes, where the defendant pushed an officer and attempted to flee. So I think it does fall far short of the probable cause standard. Okay. Thank you. Thank you. Briefly, Your Honor, I'd like to first pick up on a point that Judge Kaczynski made. Because if you look at Jackson and you look at Huffines, the officers and agents in those cases clearly knew that the defendant wasn't being forthcoming with them about ownership. In Jackson, the officers actually saw the defendant drop the suitcase and take three steps. In Huffines, the agents confronted the officer with the fact that the keys they had found in his pocket actually fit the car, and he just shrugged his shoulders and he had previously disclaimed any ownership interest in it. I think the – what you're arguing is it's not a question of fact. It's a question of his words have a legal and operative effect. As soon as he says it's not mine, we don't have to believe him. He has given up his privacy rights in the object. I think that's the position you think the cases are taking. Yes, Your Honor. And to address a question that Judge Thomas asked, and just to clarify the record, at ER 15, which is Officer Owens' declaration, Owens says that the defendant denied ever wearing it, but it is not in quotes. I have to emphasize that. As far as Rios, Rackus noted that Rios didn't squarely present whether the defendant had the right to contest the search, and the problem was in Rios, the trial court had – or the lower court had relied upon the silver platter doctrine, and the record on abandonment and what happened, the facts surrounding the abandonment, required further development. And with that, the government submits if there are no further questions. Thank you. Thank you, Mr. Rios.
judges: Lay, Kozinski, Thomas